ATTORNEY GENERAL *vs.* TOWN OF DOVER & others.

Suffolk. March 5, 1951. — July 3, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Zoning. Constitutional Law,* Separation of powers of government. *Jurisdiction,* Justiciable question. *Declaratory Judgment. Equity Jurisdiction,* Declaratory relief, Zoning. *Dover. Statute,* Retroactive statute. *Equity Pleading and Practice,* Parties. *Public Officer. Words,* "Sectarian." "Controversy."

The zoning by-law of the town of Dover forbidding the use of premises in a residence district for any purpose except certain enumerated purposes including "Educational use; if non-sectarian" was contrary to the provision added by St. 1950, c. 325, § 1, to G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1, and invalid in so far as such by-law prohibited or limited the use of premises for sectarian educational purposes.

The provision added by St. 1950, c. 325, § 1, to G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1, applies to zoning ordinances and by-laws in existence at the time of its enactment as well as those adopted thereafter.

The provision added by St. 1950, c. 325, § 2, to G. L. (Ter. Ed.) c. 40, § 30B, inserted by St. 1938, c. 133, § 2, does not require for the maintenance of an information thereunder the existence of any more "controversy" than that resulting from the bringing of the information.

A nonjudicial function is not imposed on the courts contrary to art. 30 of the Declaration of Rights by St. 1950, c. 325, § 2, amending G. L.

(Ter. Ed.) c. 40, § 30B, inserted by St. 1938, c. 133, § 2, by adding a provision for the Attorney General's bringing an information in equity for a declaratory decree as to the validity of any zoning ordinance or by-law.

There was no occasion for joining the selectmen of a town as defendants in an information in equity brought by the Attorney General against the town under G. L. (Ter. Ed.) c. 40, § 30B, inserted by St. 1938, c. 133, § 2, as amended by St. 1950, c. 325, § 2, for a declaratory decree as to the validity of a provision of the town's zoning by-law.

It was not to be assumed that any officer of a town would attempt to enforce a provision of its zoning by-law judicially determined to be invalid.

INFORMATION in equity, filed in the Superior Court on April 12, 1950.

The suit was heard by *Swift,* J.

*H. W. Radovsky,* Assistant Attorney General, (*L. E. Ryan* & *D. H. Stuart,* Assistant Attorneys General, with him,) for the Attorney General.

*C. C. Cabot,* (*J. N. Worcester* & *J. P. Weitzel* with him,) for the defendants.

*J. D. Fitzgerald* of the District of Columbia & *E. J. Duggan,* and *L. Pfeffer* of New York, *G. A. Berlin,* & *P. Baum,* by leave of court, submitted briefs as amici curiae.

QUA, C.J. This is an information in equity originally brought in the Superior Court by the Attorney General under G. L. (Ter. Ed.) c. 40, § 30B, inserted by St. 1938, c. 133, § 2, as amended by St. 1950, c. 325, § 2, against the town of Dover and its selectmen to have declared invalid a by-law of the town purporting to exclude from districts zoned for "residence" any use of premises for sectarian educational purposes. The trial judge made findings of fact and rulings of law and thereupon reserved and reported the case upon the pleadings, the evidence, and the findings and rulings, "such decrees to be entered as justice and equity may require."

In the view we take of the case there is no dispute over the decisive facts, and there is no necessity to describe, even in outline, a controversy between a religious organization and the town or its selectmen, which furnished the occasion for the bringing of this proceeding.

Section 25 of c. 40 of the General Laws as appearing in St. 1933, c. 269, § 1, is the section which confers general powers upon municipalities to enact zoning ordinances and by-laws. By St. 1950, c. 325, § 1, there was added to the first paragraph of the section conferring these general powers a limitation or qualification in these words, "No by-law or ordinance which prohibits or limits the use of land for any church or other religious purpose or which prohibits or limits the use of land for any religious, sectarian or denominational educational purpose shall be valid."

Section 30B of said c. 40, inserted by St. 1938, c. 133, § 2, is the section which gives the Superior Court jurisdiction at the instance of proper public officers (*Tranfaglia* v. *Building Commissioner of Winchester*, 306 Mass. 495, 498–499) to enforce zoning ordinances and by-laws. The same act of 1950 which limited the zoning power of municipalities in respect to religious purposes and religious, sectarian, or denominational educational purposes, also contains a § 2 amending said § 30B by adding thereto the following, "The attorney general, in his own name as such officer, shall bring an information in equity for a declaratory decree as to the validity of any municipal ordinance or by-law enacted under sections twenty-five to thirty A, inclusive." This is the provision under which the present information was filed.

In 1933 the town of Dover adopted a zoning by-law prohibiting by § II the erection, alteration, or use of any building or premises in a residence district for any purpose except certain enumerated purposes which, in addition to "1. Detached one-family dwelling," included "3. Church," and "4. Educational use." On March 4, 1946, this by-law was amended in subdivision 4 last above quoted, so that the subdivision read, "4. Educational use; if non-sectarian and if not organized or operated for private profit." The amendment was approved by the then Attorney General. One effect of it, if valid, would be to prohibit any use of land or buildings in a residential district for sectarian educational purposes. The present Attorney General contends that if the amended subdivision was ever valid, it became

invalid immediately upon the taking effect of the statute of 1950.

In our opinion this contention is correct.

We think it plain that the statute and subdivision 4 of the by-law as amended cannot stand together. The statute says that "No by-law or ordinance which prohibits or limits the use of land for any . . . religious, sectarian or denominational educational purpose shall be valid." The amended by-law attempts to admit to residence districts educational uses only "if non-sectarian." The conflict is apparent. An argument has been addressed to us as to possible different meanings of the word "sectarian" in connection with "educational purpose," but it seems to us unnecessary to elaborate upon this. The word "sectarian" as used in the statute is broad enough to embrace any meaning which can properly be assigned to the same word following the prefix "non-" in the by-law. For purposes of this case it is immaterial whether an educational enterprise becomes "sectarian" because it teaches the tenets of a particular sect, because it is controlled by a particular sect, because it admits only students belonging to a particular sect, or for whatever other reason.

We cannot accept the argument of the defendants that the act of 1950 does not apply to ordinances or by-laws in existence when it was enacted but applies only prospectively to such as may be passed after the statute was enacted. There can be no doubt that the statute was intended as an expression of a general policy to take away from all municipalities all power to limit the use of land for church or other religious purposes or for religious, sectarian, or denominational educational purposes. In a case like this there could have been no intent to leave ordinances and by-laws of the forbidden type in force in municipalities which had already passed such ordinances or by-laws, while prohibiting other municipalities from passing them. "The power of the General Court over the subject of zoning is supreme. Article 60 of the Amendments to the Constitution. When it has spoken to any branch of that subject, conflicting by-laws

or ordinances established by local authority must give way." *Bennett* v. *Board of Appeal of Cambridge,* 268 Mass. 419, 422.

The defendants' principal contention seems to be that the information cannot be maintained because there is no justiciable question due to the absence of a "controversy" which can be settled by judicial decision. It is contended that such a "controversy" is necessary, first because the general statute relating to declaratory judgments, G. L. (Ter. Ed.) c. 231A, § 1, inserted by St. 1945, c. 582, § 1, requires one, and second because without such controversy the statute of 1950 would impose a nonjudicial function upon the court in violation of the doctrine of separation of powers. Declaration of Rights, art. 30.

The first reason need not detain us long. The act of 1950 does not mention c. 231A, and we seriously doubt whether there was any intent to import into that act any of the provisions of the general law of declaratory judgments. But even if we assume that in general these statutes are to be read together, the act of 1950 means what it says and so far as statutory construction goes must be deemed to have been intended to create a right in the Attorney General to proceed with no more controversy than that brought about by bringing the information.

The second reason raises the real question. We are of opinion, however, that the statute does not impose upon the courts a nonjudicial function. It is a commonplace that the legislative department of government may by the enactment of new laws create new rights, powers, and duties not previously existing and new procedures for their enforcement, with the result that new causes of action arise of which the appropriate courts have jurisdiction. That is what has happened in this instance. By the second section of St. 1950, c. 325, the Legislature has in effect said that whenever it appears to the Attorney General that a municipal ordinance or by-law relative to zoning is probably invalid he shall have a cause of action for the determination of its validity. That is a kind of issue with which the courts are constantly dealing, and with which they are particularly

adapted to deal. It involves only the usual interpretation of the law and its application to the facts. See *Driscoll* v. *Mayor of Somerville*, 213 Mass. 493. It does not involve questions of public policy. The decision of such an issue is neither a legislative nor an executive act. We assume that the Legislature could itself reach down into the affairs of any town and by statute abolish a particular by-law, but instead of taking that course, to which there might be many practical objections, it preferred to set up a system whereby the validity of certain questioned by-laws could be determined in a judicial manner, with full opportunity for argument and with consistency and continuity in the interpretation of the laws. In determining to do this the Legislature decided to call upon the judicial branch of the government as the most appropriate for the purpose. It ought to be possible for the Legislature to do so. If it is thought essential to have a "controversy" that can be ended by the decision, such a controversy can be found in the interest which the public as a whole, represented by the Attorney General, has in keeping the zoning regulations of municipalities within lawful bounds and in not allowing them to become instruments of discrimination or oppression, as opposed to the interest which the municipality may be assumed to have in defending the ordinance or by-law which it has in due form adopted. This controversy is ended by the decision, and even though the decree is declaratory in form, practical results are achieved.

Such a controversy is not analogous to an issue which has become moot and so is no longer a proper subject for judicial decision. The question posited by the Attorney General whether the by-law as amended is valid is still a live question upon which by the provisions of G. L. (Ter. Ed.) c. 40, § 30B, as amended by St. 1950, c. 325, § 2, the Attorney General is entitled to a decision.

Many instances can be cited where functions placed upon courts have been held or commonly accepted to be judicial in character which no more resemble the conventional law suit than does the duty of passing upon the validity of ordi-

nances or by-laws involved in the present case. *Salem Turn-pike & Chelsea Bridge Corp.* v. *County of Essex,* 100 Mass. 282, 286–287 (appointment by the court of commissioners to apportion the cost of a public highway upon the municipalities benefited thereby).[1] *Case of Supervisors of Elections,* 114 Mass. 247, 250 (naturalization of aliens). *Olds* v. *City Trust, Safe Deposit & Surety Co.* 185 Mass. 500 (dissolution of corporations). *Attorney General* v. *Tufts,* 239 Mass. 458, 478–481 (removal for cause of officer having duties connected with the work of the courts). *Boston Elevated Railway* v. *Commonwealth,* 310 Mass. 528 (determination whether there was just cause for legislative declaration of forfeiture of franchise). *LaChapelle* v. *United Shoe Machinery Corp.* 318 Mass. 166, and cases cited (inquiry and report to Attorney General with view to future prosecution by him). *Attorney General* v. *"Forever Amber,"* 323 Mass. 302[2] (adjudication whether book obscene, indecent or impure).

In the case of *Attorney General* v. *Methuen,* 236 Mass. 564, it was held that an information in the nature of a quo warranto could be maintained by the Attorney General against a purported city corporation to determine whether it was usurping the franchise to be a city which it was purporting to exercise. The writ was refused on discretionary grounds. And in *Attorney General* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 194, it was said that, were it not for a statute that furnished a different remedy, a similar proceeding could be maintained against a corporation to prevent it from engaging in activities beyond the scope of its charter. These two cases, we think, bear a strong resemblance in principle to the case before us. Such questions have long been held within the range of judicial competence. It is true that in the cases last mentioned relief, if granted, might have gone beyond mere declaration, but since the decision in *Whiteside* v. *Merchants National Bank,* 284 Mass. 165, 174, it may be considered as settled

---

[1] Compare *Boston* v. *Chelsea,* 212 Mass. 127.

[2] Other similar cases are *Attorney General* v. *"God's Little Acre,"* 326 Mass. 281, and *Attorney General* v. *"Serenade,"* 326 Mass. 324.

that the fact that only declaratory relief can be granted does not of itself alone prevent an issue being justiciable.

In accordance with the usual practice of this court not to decide questions of constitutional law beyond the requirements of the case we have not considered whether the by-law is invalid as a violation of the provisions of the Constitutions of the United States and of this Commonwealth for the protection of religion and the prevention of discrimination, although these questions have been argued by the Attorney General and by certain amici curiae in their briefs. It is enough for present purposes that the portion of the by-law complained of, even if it would otherwise be valid, which we do not mean to intimate, has been rendered invalid by § 1 of the act of 1950. See *Catholic Bishop of Chicago* v. *Kingery*, 371 Ill. 257; *State* v. *Hill*, 59 Nev. 231; *State* v. *Joseph*, 139 Ohio St. 229; *Roman Catholic Archbishop of Oregon* v. *Baker*, 140 Ore. 600.

We have not been able to see why the selectmen as individuals should have been joined as defendants in this proceeding for a declaratory decree under § 2 of the act of 1950. They have no private interest in the subject matter distinct from the interest of the town itself. They do not enact by-laws and cannot repeal them. There is no necessity to call a town meeting to repeal or amend the by-law, since the objectionable portions have already been rendered invalid by § 1 of the act of 1950, and the decree in this case will so declare. It is not to be supposed that any town officer will attempt to enforce a provision judicially determined to be invalid, but if any officer should do so, prompt and effective remedies are available.

An interlocutory decree is to be entered sustaining the demurrers of the defendant selectmen and a final decree dismissing the information as to them. A further final decree is to be entered against the defendant town declaring subdivision 4 of § II of the zoning by-law invalid in so far as it prohibits or limits the use of buildings or premises for sectarian educational purposes.

*So ordered.*