ASSESSORS OF DOVER *vs.* DOMINICAN FATHERS PROVINCE OF ST. JOSEPH.

Suffolk.    May 7, 1956. — September 12, 1956.

Present: RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Taxation,* Real estate tax: exemption, contract to pay taxes; Appellate Tax Board: appeal to Supreme Judicial Court. *Charity. Corporation,* Charitable corporation. *Contract,* What constitutes, To pay taxes, Validity. *Zoning.*

A question of law not raised before the Appellate Tax Board is not open in this court on an appeal from the board's decision under G. L. (Ter. Ed.) c. 58A, § 13, as amended. [535]

A sectarian religious order which acquired premises in a residential district of a town wherein the use of premises for sectarian educational purposes was prohibited by the town's zoning by-law and which contended at all times that such prohibition was invalid and stated that it intended "eventually to use the premises as a novitiate and seminary for the education of future priests," did not, in securing from the board of appeals and occupying under a zoning variance permitting immediate church and residential uses of the premises, contract with the town to fix and continue a partially taxable status of the premises on the basis of the church and residential uses so as to preclude itself from subsequently

334 Mass. 530

Assessors of Dover *v.* Dominican Fathers Province of St. Joseph.

claiming that the premises were wholly exempt from taxation when used as a seminary after it had been determined that the zoning prohibition against use for sectarian educational purposes was invalid. [536]

Even if the circumstances in which a landowner obtained from the board of appeals of a town a zoning variance permitting certain uses of his property could be said to have given rise to a contract by him with the town fixing the status of the property respecting taxation, such a contract would be invalid. [536–537]

A municipality has no power to vary the incidence of local taxes by a contract with the taxpayer. [537]

Facts respecting a division of a sectarian religious order incorporated to "maintain and conduct a priory to be used for religious and residential purposes" and to "establish and maintain religious, ecclesiastical, and educational activities," which owned and occupied real estate for use as a priory and a seminary to train men to enter the order, teaching subjects mostly of a religious nature, and which was a nonprofit institution and used its income for its corporate purposes, warranted conclusions that it was an educational institution benefiting an indefinite class of persons and was "charitable" within G. L. (Ter. Ed.) c. 59, § 5, Third, and that its real estate was exempt from local taxation. [538–540]

The fact that a charitable corporation conducting a seminary on premises owned by it including a large building and over seventy acres of wooded and pleasant land did not actually use all the rooms of the building and most of the time used only a relatively small portion of the land did not preclude a finding that the entire premises were "occupied by . . . [it] for the purposes for which . . . [it was] incorporated" within G. L. (Ter. Ed.) c. 59, § 5, Third, where it appeared that the occupation of the building was substantial, that the members of the seminary used the land at times for walks during recreational periods, and that the officers of the corporation could reasonably conclude that all the land was necessary for the benefit of the members. [540–541]

APPEAL from a decision by the Appellate Tax Board.

*Walter Powers,* (*Walter Powers, Jr.,* with him,) for the assessors of Dover.

*Albert L. Hyland,* (*James J. Walsh* with him,) for the taxpayer.

SPALDING, J. This is an appeal by the board of assessors of the town of Dover from a decision of the Appellate Tax Board which abated in full the real estate tax levied on property owned by the Dominican Fathers Province of St. Joseph, hereinafter called the taxpayer. This decision was based upon the ground that the property assessed is exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third.

Originally there were three cases before the board by reason of the fact that abatements were sought for the years 1951, 1952 and 1953. The case involving the 1951 tax was dismissed by the board and no appeal was taken. The cases relating to the taxes for 1952 and 1953 were tried together and are the subject of the present appeal. The facts in both cases were the same. Following the entry of these cases in the county court, and pursuant to a stipulation approved by the single justice, the record for this court was prepared only with respect to the 1953 case, it being agreed by the parties that the decision in this case would govern the 1952 case.

The cases were presented to the board on a statement of agreed facts which include the following: The Order of Preachers, founded in 1216 and popularly known as the Dominican Order, is a religious congregation in the Roman Catholic Church. The order has a number of provinces, one of which is the Province of St. Joseph. The taxpayer, Dominican Fathers Province of St. Joseph, is a Massachusetts corporation which was formed on September 21, 1949, under the provisions of G. L. (Ter. Ed.) c. 180. The purposes of the taxpayer, as set forth in its charter, are in part: "To maintain and conduct a priory to be used for religious and residential purposes; to establish and maintain religious, ecclesiastical, and educational activities; to acquire and hold . . . real property necessary or proper for the maintenance and conduct of a priory and the advancement of religion, and education . . . ."

The real estate here involved, comprising seventy-eight and five tenths acres, was acquired by the taxpayer in 1949. The property is a portion of a larger estate containing about two hundred fifty-four acres. The purpose of the taxpayer in acquiring the property was to use it for a Dominican priory and a seminary. A priory is a Dominican house similar in most respects to a monastery.

The property acquired by the taxpayer was in a district zoned for residential uses. Under the zoning by-law certain nonresidential uses were permitted. Such uses in-

cluded the following: "3. Church; 4. Educational use: — If non-sectarian and if not organized or operated for private profit." The taxpayer took the position that the "non-sectarian" limitation on use for educational purposes was invalid. By St. 1950, c. 325, § 1, G. L. (Ter. Ed.) c. 40, § 25, was amended by providing that "No by-law or ordinance which prohibits or limits the use of land for any . . . religious, sectarian, or denominational educational purpose shall be valid." The validity of subdivision 4 of the above mentioned by-law was challenged by an information brought by the Attorney General and this court held that if the "non-sectarian" limitation was ever valid it became invalid immediately upon the taking effect of the 1950 amendment. *Attorney General* v. *Dover*, 327 Mass. 601.

Pending the determination in that case the taxpayer desired to occupy and make use of the premises. Its immediate plan was to use the property for church purposes and as a single family residence for members, and the taxpayer took the position that it could do this as of right even under the existing by-law. Upon being advised by the town that it would be necessary to apply for a certificate of occupancy, the taxpayer applied for such certificate and its application stated in substance that the proposed use of the premises was for church and residential purposes. The certificate was refused by the board of selectmen and upon appeal to the board of appeals the action was sustained, but the board suggested that an application for a variance be made.[1] This suggestion was acted upon by the taxpayer and a variance was granted in accordance with the application so as to permit the use and occupancy of the premises "for a combination of church and multiple dwelling purposes."[2] A certificate of occupancy for these pur-

---

[1] In its decision the board stated, "The division of the premises to be used for the two purposes [religious and residential] is susceptible of precise delineation both as a guide to this board in the granting of a variance and to the board of assessors in the assessment of taxes." "Such petition shall specify with sufficient detail to guide this board and the board of assessors in the assessment of taxes, what part of the premises is to be used for church purposes and what part for residential purposes."

[2] In its decision granting the variance the board of appeals stated: "The use of the property as hereby permitted and the erection or alteration of any

poses was issued to the taxpayer on December 20, 1949, and thereafter the taxpayer occupied the property for these purposes.

In 1951 following the decision of this court in *Attorney General* v. *Dover*, 327 Mass. 601, St. Stephen's Priory Novitiate Seminary was established on the premises. Facts with respect to the seminary will be set forth later.

The tax questions relating to the property arose in these circumstances. When the property was acquired there was located on it a large stone manor house of approximately thirty-five rooms, a caretaker's house, a greenhouse, a tool house, a pumping outfit and an artificial reflecting pool. In 1950 a chapel was consecrated in the main house. From the outset this was exempted from taxation as a house of religious worship under c. 59, § 5, Eleventh. Also eight acres adjoining the main building were exempted. The remaining land, seventy and five tenths acres, has at all times here material been taxed by the town. Beginning in 1951 the taxpayer commenced, and eventually completed, substantial changes in and additions to the main building, as well as other improvements, at a total cost of approximately a million dollars. As of 1953 the property as altered and improved was in substance as follows: a new wing had been added to the old building; opposite the main entrance of the old building a chapel had been added; in the old building were two chapels and the remaining portion contained the prior's quarters, offices and bedrooms; the new wing which was a five story structure, contained a kitchen, refectory, library, class rooms and numerous bedrooms for novices. On the grounds there are a baseball field and a swimming pool where members of the priory may exercise. There is a small natural pond which is used for swimming and skating. In 1953 the assessors exempted that portion

buildings thereon shall remain subject to all pertinent by-laws of the town and the law of the Commonwealth with respect to certificates of occupancy, building permits, taxation and otherwise. The written variance is granted to the extent and upon the terms and conditions herein set forth and no variance or exemption except as expressly herein stated is intended or to be implied herefrom."

of the property devoted to religious worship together with eight acres of land. The remainder of the property was taxed.[1] No question of valuation is presented. The position of the taxpayer is that *all* of its property is exempt from taxation. The assessors contend that the property not exempted was rightly taxed.

1. Apart from the question whether the property in question is exempt under c. 59, § 5, Third (which will be discussed later), the assessors argue that the taxpayer has contracted to pay taxes on the partial exemption basis employed by the assessors and cannot now repudiate this obligation. The arguments in support of this contention may be summarized as follows: The taxpayer applied for a variance to use the property for a combination church and residence. In so doing it committed itself intentionally to the proposition that this was to be the status of its property for tax purposes. The town, it is argued, accepted this statement at face value and granted the variance on the basis of it. This, it is argued, is in effect a contract which is binding on the taxpayer.

It does not appear that this question was raised before the Appellate Tax Board. The assessors presented numerous requests for rulings but none raises the point now urged. General Laws (Ter. Ed.) c. 58A, § 13, as amended, provides that "The [full] court shall not consider any issue of law which does not appear to have been raised in the proceedings before the board." Accordingly the point now argued is not properly before us. *Commissioner of Corporations & Taxation* v. *Boston Edison Co.* 310 Mass. 674, 676. *Fisher School* v. *Assessors of Boston*, 325 Mass. 529, 533. However,

---

[1] This property was taxed as follows:

| | |
|---|---:|
| Main house, with additions | $200,000 |
| Caretaker's house | 2,000 |
| Tool house | 750 |
| Greenhouse | 200 |
| Swimming pool | 1,000 |
| Pump outfit | 500 |
| 70½ acres of land | 9,000 |
| Total | $213,450 |

since the result will be the same and the point has been argued extensively by the assessors, we shall deal with it.

We fail to see any basis for raising a contractual obligation out of the negotiations which led to the granting of the variance. The taxpayer at all times took the position that the by-law which prevented use of the property for a sectarian educational purpose was invalid. At the hearing before the board of appeals counsel for the taxpayer informed the board that it was the taxpayer's intention "eventually to use the premises as a novitiate and seminary for the education of future priests." When the taxpayer asked for a variance for a more restricted use of the property, that is, for religious and residential purposes, it was asking for all that the board of appeals, as indicated in its decision, would then allow. After the enactment of St. 1950, c. 325, § 1, and the decision of this court (*Attorney General* v. *Dover,* 327 Mass. 601) construing it, it became apparent that the provision of the town by-law prohibiting use of the property for sectarian educational purposes was invalid. Thereafter the taxpayer proceeded, as it had a right to do, to use the property for the purposes of a seminary. In exercising this right it had a right to take advantage of such exemptions as it might be entitled to under the tax laws. And it did not lose that right merely because it formerly had sought a variance under the zoning laws for a more limited use of the property. We find no basis in these negotiations for a variance for treating the transaction as a contract which would in any way affect the rights of the taxpayer, under the taxing statutes. But even if these negotiations could be tortured into a contract we are of opinion that it would not be valid. The zoning and taxing statutes are separate and distinct, and each is separately administered. A property owner may or may not be entitled to a variance. Many factors have to be considered. But those relating to the subject of taxation and exemptions have no relevancy. If a board of appeals upon consideration of the relevant factors concludes that a property owner is entitled to a variance it should grant it. It has no right in doing so to attach

conditions by contract or otherwise touching the subject of taxes or exemptions. Those are matters outside its jurisdiction. Moreover, what property is taxable and what is exempt is a subject covered by laws which are and must be general in their operation. They cannot be varied by a contract between the town and the taxpayer. *Southborough* v. *Boston & Worcester Street Railway,* 250 Mass. 234, 239. *Waltham Watch & Clock Co.* v. *Waltham,* 272 Mass. 396, 412.

2. That portion of the taxpayer's property devoted to religious worship, including eight acres of land, need not concern us, for it was exempted under G. L. (Ter. Ed.) c. 59, § 5, Eleventh. The question is whether the remainder is exempt. It is agreed that if there is any exemption it must be found in G. L. (Ter. Ed.) c. 59, § 5, Third. The provisions here material read as follows: "Section 5. The following property and polls shall be exempt from taxation: . . . Third, Personal property of literary, benevolent, charitable and scientific institutions . . . incorporated in the commonwealth, the real estate owned and occupied by them or their officers for the purposes for which they are incorporated, and real estate purchased by them with the purpose of removal thereto, until such removal, but not for more than two years after such purchase, except as follows: (a) If any of the income or profits of the business of the institution or corporation is divided among the stockholders or members, or is used or appropriated for other than literary, educational, benevolent, charitable, scientific or religious purposes, its property shall not be exempt."

The burden of establishing that the real estate in question is exempt from taxation, of course, rests on the taxpayer. *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 257. The assessors argue that the taxpayer has not sustained this burden, for it is not a "literary, benevolent, charitable . . . [or] scientific" institution within the meaning of those words in § 5, Third. This question was appropriately raised before the board by various requests for rulings and separate discussion of them is not required. While agreeing that the seminary is a

"school," the assessors contend that the statutory categories "benevolent" and "charitable" are inapplicable to the taxpayer; that the taxpayer is not a "scientific" institution, because it carries on no research in or teaching of science; and that it is not a "literary" institution within the meaning of the statute. With respect to the last contention the assessors' position is that although the subjects taught in the seminary are worthy of admiration and respect they cannot be termed "literary" within the purview of the statute.

Corporations falling within the class described in § 5, Third, are those "which are 'charitable' in the broad sense in which that word is used in the law relating to public charities." *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 384–385. The statute does not in terms exempt educational institutions, though "educational" purposes are named specifically among the purposes for which income or profits of an institution within the excepted class may be used or appropriated without loss of the exemption. But it is "settled that educational institutions of a public charitable nature are within the class of 'literary, benevolent, charitable and scientific institutions' which are exempt from taxation even if the education given is not strictly 'literary' or 'scientific' within the ordinary meaning of these words." *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 386. *Mount Hermon Boys' School* v. *Gill,* 145 Mass. 139, 146. *Parkhurst* v. *Treasurer & Receiver General*, 228 Mass. 196, 198–199. *South Lancaster Academy* v. *Lancaster*, 242 Mass. 553, 558.

In order to determine whether the taxpayer is entitled to exemption it becomes necessary to state in more detail the purposes and the nature of use of the property in question. The purposes of the taxpayer are "To maintain and conduct a priory to be used for religious and residential purposes" and "to establish and maintain religious, ecclesiastical, and educational activities." As stated above, a seminary has been established on the property. The particular purpose of it is to train men who plan to enter the Dominican Order. The curriculum at the seminary constitutes the first year of

study. Thereafter the candidate moves on to other institutions where six more years of study, prior to ordination, are required. On entering the seminary, he must have had two years of recognized college education. His course of studies there consists of the following: "training in Scriptures needed for the Divine Office, understanding of moral theology basic to religious life, and knowledge of the history, constitutions, and rubrics of the Order." In addition there are studies in Latin and sacred theology. At the end of the one year course at the seminary the novice, if successful, is "admitted to profession in the Order, i.e. he is permitted to take the vows of poverty, chastity and obedience for a limited period of three years and he thereby becomes a member of the Order." Many priests who have been ordained in the Order are on the faculties of many colleges and universities throughout the world. The fee for attendance at the seminary, which includes tuition, board and books, is $510 a year. In 1953 there were thirty novices at the seminary, five of whom came from Massachusetts. Some novices pay the full amount but more than half pay only a portion of it or nothing at all. This income is not sufficient to maintain the priory and there is a substantial deficit each year that is defrayed from the general funds of the Order. Each member of the priory (prior, dean, procurator and other priests and lay brothers) receives $15 a month "salary" which is really intended as spending money for small personal needs. "Except for that 'salary,' no stockholder or member of the corporation receives any of its income."

We are of opinion that on the facts before it the decision of the Appellate Tax Board was correct. The purpose for which the seminary was established is to train young men for the Roman Catholic priesthood. Such purpose is educational. The facts show that the taxpayer is a nonprofit institution and that the income received by it is used for this purpose. "An educational purpose without special reference to the poor is a charitable purpose . . . if, like charitable purposes generally, it is not to be carried out for

private profit . . . and is for the benefit of 'the public at large or some part thereof, or an indefinite class of persons.'" *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 387. Doubtless in a broad sense education of a few persons may be for the benefit of the public. But to say on the facts here that the activities of the seminary constitute a direct specific benefit resulting to the public at large would be a difficult proposition to maintain. Nevertheless, the persons benefited by the taxpayer constitute, we think, an indefinite class of persons. It appears that those who study at the seminary change from year to year.

That the subjects taught at the seminary are to a considerable degree of a religious nature does not destroy the right to an exemption under § 5, Third. In *South Lancaster Academy* v. *Lancaster,* 242 Mass. 553, at page 558, this court said, "The circumstance that Bible teaching and religious instruction are made a prominent feature in the course of study does not make the academy any less an educational institution; nor does the fact that it is a denominational school prevent a finding that it is exempt from taxation under the statute." Compare *New England Theosophical Corp.* v. *Assessors of Boston,* 172 Mass. 60.

Under § 5, Third, there can be no exemption unless the institution occupies the real estate for the purpose for which it is incorporated. The assessors argue that because certain portions of the buildings and much of the land owned by the taxpayer are not always physically used, such portions are not exempt. The facts show that not all of the rooms of the main building were actually used, but we think that the occupation was so substantial that for all practical purposes the property could be said to be occupied for the purposes for which the taxpayer was organized.

The real estate owned by the taxpayer comprises seventy-eight and five tenths acres. During most of the time only a relatively small portion of this area is used. But the area, which is wooded and pleasant, is used at times by members of the priory for walks during recreational periods. The rule deducible from our decisions is that what lands

are reasonably required, and what uses of land will promote the purposes for which the institution was incorporated, must be determined by its own officers. So long as they act in good faith and not unreasonably in determining how to occupy and use the real estate of the corporation their determination will not be interfered with by the courts. *Massachusetts General Hospital* v. *Somerville,* 101 Mass. 319, 322. *Emerson* v. *Trustees of Milton Academy,* 185 Mass. 414, 415. *Springfield Young Men's Christian Association* v. *Assessors of Springfield,* 284 Mass. 1, 6. Tested by these principles we think that the officers of the taxpayer could reasonably conclude that the entire area was necessary for recreational purposes and for the "social, moral and aesthetic advancement of the pupils who are intrusted to . . . [their] charge." *Emerson* v. *Trustees of Milton Academy, supra,* at page 418.

It follows that as ordered by the Appellate Tax Board the tax for 1952 in the amount of $7,470.75 and the tax for 1953 in the amount of $6,830.40 must be abated.

*So ordered.*