FITCHBURG HOUSING AUTHORITY & another[1] vs. BOARD OF
ZONING APPEALS OF FITCHBURG & another.[2]

Worcester. April 9, 1980. — June 12, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Zoning*, Educational use. *Education*. *Words*, "Education."

Use of premises as a residential facility for the education and rehabilita-
tion of formerly institutionalized adults with histories of mental illness
was a use for a public educational purpose exempt from a local zoning
ordinance under G. L. c. 40A, § 2, as amended through St. 1959,
c. 607, § 1. [872-875]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 17, 1978.

The case was heard by *Beaudreau, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*William Link, III (Charles E. Cashman* with him) for the
plaintiffs.

*Timothy S. Hillman* for the defendants.

*Francis X. Bellotti,* Attorney General, *Carl Valvo,* Assist-
ant Attorney General, *& Ann Futter,* Legal Assistant to the
Attorney General, for the Department of Mental Health,
amicus curiae, submitted a brief.

WILKINS, J. The dispositive issue in this case is whether a
facility, proposed to be operated by the North Central Mas-
sachusetts Mental Health Association, Inc. (Association), on
premises owned by the Fitchburg Housing Authority (Hous-
ing Authority), is a public educational use which the Fitch-
burg zoning ordinance may not forbid. The Association
proposes to operate a residential facility in which formerly

---

[1] North Central Massachusetts Mental Health Association, Inc.

[2] Building Inspector of Fitchburg.

institutionalized but educable adults, with histories of mental difficulties, will live while being trained in skills for independent living, such as self-care, cooking, job seeking, budgeting, and making use of community resources. The Association relies on that provision in G. L. c. 40A, § 2, as amended through St. 1959, c. 607, § 1, that provides that no zoning ordinance "which prohibits or limits the use of land . . . for any educational purpose which is . . . public shall be valid."[3]  See *Attorney Gen.* v. *Dover,* 327 Mass. 601, 603 (1951). We conclude that the use that the Association intends to make of the premises is a use for a public educational purpose that cannot be prohibited or limited by the provisions of the Fitchburg zoning ordinance.

On May 8, 1978, the Housing Authority applied for a permit to convert a residential building on Prospect Street for use as a community residence. The superintendent of buildings ruled that a community residence was not permitted in the Residence B zoning district in which the premises lay. On May 10, 1978, the Association and the Housing Authority appealed to the city's board of zoning appeals seeking "authorization to operate a residential educational and rehabilitation facility for adults with histories of psychiatric difficulties." The appeal was not founded on a claim that a variance should be granted from the provisions of the zoning ordinance but rather on the theory that the proposed use was permitted as a matter of law. The appeal relied on (1) the language of the zoning ordinance that permitted "Private and Public Schools" in a Residence B zoning district and (2) the provisions of § 2 of The Zoning Enabling Act.

The board of zoning appeals heard the matter on June 5, 1978, and rendered a decision denying the application on

---

[3] This language appears in The Zoning Enabling Act which has been superseded by The Zoning Act, a revised zoning regulatory statute adopted in 1975. St. 1975, c. 808, § 3. All parties have treated the issue in the court below and here as governed by the quoted language of § 2 of The Zoning Enabling Act and not by similar language now appearing in § 3 of The Zoning Act. It appears that, at the time of the filing of the application for authority to use the premises, § 2 of The Zoning Enabling Act was the controlling statute.

August 2, 1978 (eighty-four days after the appeal was filed). The board concluded that the proposed use was not a school but did not explicitly pass on the question whether the statutory protection provided by § 2 was applicable to the Association's proposed use. The Association and the Housing Authority appealed to the Superior Court, combining reliance on § 2 with a claim that, because the board of zoning appeals did not act on the application within seventy-five days of the filing of the appeal, the application must be deemed to have been granted pursuant to § 15 of The Zoning Act.[4]

The issues for decision in the Superior Court were questions of law on the facts found by the judge. No deference to the judgment or discretion of the local zoning board was required. Opinions relied on by the zoning board, defining the role of a Superior Court judge on an appeal from the granting of a variance or a special permit, are inapplicable.

We summarize the basic facts found by the judge. The proposed facility would be located in a single-family house, formerly occupied by a physician, and would be operated to work with chronically disturbed people who have been in mental institutions. These people would require medical treatment[5] and would participate in a "training program

---

[4] General Laws c. 40A, § 15, as appearing in St. 1975, c. 808, § 3, provides in part that "[t]he decision of the board shall be made within seventy-five days after the date of the . . . application . . . [with an exception not relevant here]. Failure by the board to act within said seventy-five days shall be deemed to be the grant of the . . . application . . . sought" subject to judicial appeal. This automatic approval provision changed prior law. See *Casasanta* v. *Zoning Bd. of Appeals of Milford,* 377 Mass. 67, 69-73 (1979); *Cullen* v. *Building Inspector of N. Attleborough,* 353 Mass. 671 (1968). The new statutory provision became effective in Fitchburg on July 1, 1978. Because of the conclusion we reach on the exemption afforded by § 2 of The Zoning Enabling Act, we need not decide whether the "automatic" approval provision of the new act applied to an appeal submitted to and heard by the board of zoning appeals prior to July 1, 1978. Our opinion in the *Casasanta* case does not answer this question. We note that the board's decision was rendered within seventy-five days of July 1, 1978.

[5] The only evidence of a need for medical treatment was testimony that 95% of the residents would be taking prescription medicine largely under their own control, although the staff might control and distribute the

aimed at developing or learning social and interpersonal skills such as learning to keep themselves physically clean, learning to shop and how to use money, [and] learning to cook." The basic purpose would be "to train people to rid themselves of bad habits and teach them habits so that they would be qualified to live independently by themselves in a community." There would be full-time house managers, whose qualifications would include a bachelor's degree in human services. None of the teachers would be certified under G. L. c. 71, § 38G. In selecting personnel, the emphasis would not be on teaching experience or qualifications, but more on social and psychological training and abilities.

The judge concluded that the proposed facility would not be a school "but a medical facility." [6] He acknowledged the claim that the use was an exempt educational use but did not discuss the question in determining that the facility would not be a school. Judgment was entered that no modification of the decision of the board of zoning appeals was required. We transferred here on our own motion the appeal of the Association and the Housing Authority.

The central issue in this case is one of law, not of fact. The judge's findings are based on the Association's representations at trial concerning its planned use of the premises.

---

medication for some residents. There would be neither medically trained personnel nor medical facilities on the premises. The judge found that a staff psychologist would visit periodically and a psychiatrist would be available. Some residents of the facility would be under conservatorship or guardianship. There was evidence that the ten people served by the facility would be in residence for varying periods of time, as long as two years, if necessary. The Association disclaims any intention to accept in the facility individuals whose primary diagnosis is alcoholism, criminality, drug abuse, organic brain disorder, violent behavior, antisocial sexual behavior, or mental retardation.

[6] The question whether the proposed use would be a school and hence a permissible use under the Fitchburg zoning ordinance was not raised in the complaint filed in the Superior Court and, by language in the complaint, was inferentially abandoned as a ground for the appeal. The judge discussed the point. The appellants argue it here. In any event, we need not decide the point because it is made irrelevant by our decision that the proposed use is an educational use.

The crucial question is whether the proposed use is a use for an "educational purpose," as that term is used in G. L. c. 40A, § 2.[7] If the judge's characterization of the proposed facility as a "medical facility" is a conclusion that, as a matter of law, the proposed use would not be "educational," it must be reversed as an error of law. See *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 674 (1977). To the extent that it is a finding of fact, it must be set aside as "clearly erroneous." Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). See *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 161 (1977). The fact that many of the residents of the facility will have been residents of mental institutions and will be taking prescription drugs does not negate its educational purpose or make its dominant purpose medical. There will be no nurses or doctors regularly in attendance at the facility. There is no indication that the residents will be a threat to themselves or to the public.[8]

The fact that the residents will be adults does not deprive the use of its educational character. See *Cummington School of the Arts, Inc.* v. *Assessors of Cummington,* 373 Mass. 597, 604 (1977) (tax case) (school of the arts largely for adults); *Assessors of Lancaster* v. *Perkins School,* 323 Mass. 418, 422 (1948) (tax case) (some adults received the benefits of the school). Nor is it controlling that the nature of what is taught is not within traditional areas of academic instruction or that the instructors will not be certified by the Commonwealth. See *Cummington School of the Arts, Inc.* v. *Assessors of Cummington, supra* at 603, and cases cited. See also *Harbor Schools, Inc.* v. *Board of Appeals of Haver-*

---

[7] There is no claim that, if the use is an educational use, it is not a *public* educational use. The facility will be available to all people in north central Massachusetts, and, therefore, its character as a public use cannot reasonably be, and is not, questioned. See *Worcester* v. *New England Inst. & New England School of Accounting, Inc.,* 335 Mass. 486, 488-490 (1957); *Assessors of Lancaster* v. *Perkins School,* 323 Mass. 418, 421 (1948).

[8] On the contrary, the Association will not accept as residents persons whose primary diagnoses suggest the potential for dangerous or antisocial behavior. See note 5, *supra.*

*hill*, 5 Mass. App. Ct. 600, 603 (1977), discussed *infra*. The fact that the facility will provide residential accommodations does not interfere with its educational use. *President & Fellows of Harvard College* v. *Assessors of Cambridge*, 175 Mass. 145, 146-147 (1900). *Trustees of Phillips Academy* v. *Andover*, 175 Mass. 118, 125 (1900). The question remains whether the dominant activity will be educational.

There is respectable authority that a residential facility for the education of emotionally disturbed children is an educational use. Our Appeals Court so held in *Harbor Schools, Inc.* v. *Board of Appeals of Haverhill*, *supra*, dealing with § 2 of The Zoning Enabling Act. In that case, the educational program offered by the facility involved indoctrination in traditional academic subjects and fulfilled the public policy expressed in c. 766 of the Acts of 1972 concerning the education of children with special needs. *Id.* at 606. State certification of its teachers apparently was not required. *Id.* at 603. A residential facility approved by a State Department of Education for the education of children with mild emotional disturbances, offering a curriculum comparable to that afforded in the public schools, has been held to be a "school" within the meaning of the word in the local zoning regulations. *Armstrong* v. *Zoning Bd. of Appeals of Washington*, 158 Conn. 158 (1969). The circumstances were substantially similar and the result was the same in *Wiltwyck School for Boys, Inc.* v. *Hill*, 11 N.Y.2d 182 (1962). In *Areba School Corp.* v. *Mayor of Randolph*, 151 N.J. Super. 336, 341 (1977), the court rejected as clearly erroneous a finding that a residential school for emotionally disturbed children, designed to meet the educational obligations of local school boards, was a therapeutic community with merely an ancillary educational component.

The present case concerns the issue of what is an educational use in circumstances not as closely related to the fulfilment of traditional educational goals as were the circumstances in the *Harbor Schools* case. This court, however, has long recognized "education" as "a broad and comprehensive term." *Mount Hermon Boys' School* v. *Gill*, 145

Mass. 139, 146 (1887). In the *Mount Hermon* case, we accepted as a definition of education "the process of developing and training the powers and capabilities of human beings," and embraced the idea that education is the process of preparing persons "for activity and usefulness in life." *Id.* at 146.

The proposed facility would fulfil a significant educational goal in preparing its residents to live by themselves outside the institutional setting. Instruction in the activities of daily living is neither trivial nor unnecessary to these persons. On the contrary, for the prospective residents of the proposed facility to learn or relearn such skills is an important step toward developing their powers and capabilities as human beings. Inculcating a basic understanding of how to cope with everyday problems and to maintain oneself in society is incontestably an educational process. That is the dominant purpose of the proposed facility.

Similar reasoning guided the court in *School Lane Hills, Inc.* v. *East Hempfield Township Zoning Hearing Bd.*, 18 Pa. Commw. Ct. 519, 525 (1975), where a center for the training of retarded youth to assume a positive role in society by providing them with industrial skills was held to be "educational in nature" under a local zoning ordinance. The court said that "[w]hile such skills may appear simplistic to a 'normal' person, their assimilation nonetheless represents a great improvement in the normal human condition of the trainees. The nature of the Child Development Center is no less educational than that of the most demanding university." *Id.* at 524. Past and continuing emotional or psychiatric problems may determine the character of the training furnished to residents of the proposed facility, but they do not mark the facility as "medical" or render it any less educational.

The judgment is reversed. Judgment shall be entered declaring that the proposed use is a public educational use that may not be barred under the Fitchburg zoning ordinance and that a permit to use the premises may not be denied to the Association and the Housing Authority on the ground that the proposed use is not permitted as a matter of law.

*So ordered.*