11 Mass. App. Ct. 97                                          97

Commissioner of Code Inspection of Worcester *v.* Worcester Dynamy, Inc.

COMMISSIONER OF CODE INSPECTION OF WORCESTER *vs.*
WORCESTER DYNAMY, INC.

Worcester.  November 6, 1980. — December 29, 1980.

Present: BROWN, DREBEN, & NOLAN, JJ.

*Zoning,* Educational use.  *Education.*

A residential facility operated by a nonprofit educational corporation as
an integral part of its educational program was not subject to local
zoning use regulations.  [98-100]

CIVIL ACTION commenced in the Superior Court De-
partment on October 22, 1979.

The case was heard by *Meagher,* J.

*James H. Barnhill* for the defendant.

*Bennett S. Gordon,* Assistant City Solicitor, for the plain-
tiff.

DREBEN, J.  The commissioner of code inspection of the
city of Worcester brought this action seeking to enjoin
Worcester Dynamy, Inc. (Dynamy), from operating an off-
campus dormitory at 17 Hamden Street in Worcester.
Under the city's zoning ordinance, a lodging house or dor-
mitory may be operated in the residential district in which
17 Hamden Street is located only if a special permit is ob-
tained from the board of appeals.[1]  Dynamy did not seek or
procure such a permit.  A judge of the Superior Court, after
hearing, found that the "use of the premises is residential in
nature and is subject to local zoning use regulation."  He
entered a judgment precluding Dynamy from "operating
the premises . . . as living quarters for its interns so long as it
does not hold a [s]pecial [p]ermit."  We reverse.

---

[1] Worcester Zoning Ordinance § 15A(4) (1963).

General Laws c. 40A, § 3, as appearing in St. 1975, c. 808, § 3, provides in relevant part that "[n]o zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures . . . for educational purposes on land owned or leased . . . by a nonprofit educational corporation." For the history of this statute see *The Bible Speaks* v. *Board of Appeals of Lenox*, 8 Mass. App. Ct. 19, 27 n.10 (1979). In the circumstances of this case, we hold that the premises which are used as living quarters for Dynamy interns are not subject to the permit requirement of the Worcester zoning ordinance.

The following are the subsidiary facts found by the judge as supplemented by undisputed testimony and exhibits, see *Western Mass. Elec. Co.* v. *Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815, 817 (1979), and cases cited. Dynamy is a nonprofit corporation organized under G. L. c. 180 "exclusively for educational purposes." Its primary goal is "to accelerate the process of maturing in young adults." It offers internships for an academic year which provide work experience in the professions, crafts, businesses and other fields. Dynamy provides residential living arrangements which are "designed to give interns the major responsibility for management."[2] The residential portion of the program

---

[2] Dynamy's catalogue includes the following statements: "Today's society spends tremendous time and energy on developing intellect through academic work, but too little time in developing character as well as intellect through non-academic means such as experiential learning. . . . [T]he young need direct assistance in finding methods and developing the strength necessary to become actively participating, contributing adults. . . . Dynamy seeks to help young people . . . in order that they might build personal strength and character at an earlier age than usual through participating in a guided program of intense experience and thoughtful reflection."

In describing residential living, the catalogue states: "Each group of interns in an apartment decides on budgeting, purchase, and preparation of food. The group may also decide on other cooperative activities such as sponsoring a guest speaker at their apartment or arranging for a dinner exchange with other interns, staff, trustees, or sponsors. Through living together, interns are able to develop a mutually supportive environment in which they can learn from each other by sharing their day-to-day experiences."

is considered by the Dynamy director to be central to its educational goals. Students from the Worcester area may, however, live at home. Dynamy has arrangements with a number of educational institutions whereby its interns are given credit for participation in the program, and high school seniors of the city of Worcester may enroll in the program for credit as a substitute for the senior year.

Although the trial judge concluded that the use of the premises is "residential in nature" and "subject to local zoning use regulation," we reject that conclusion. "If the judge's characterization of the [use as a residential use] is a conclusion that, as a matter of law, the proposed use [is] not . . . 'educational,' it must be reversed as an error of law. [Citation omitted.] To the extent that it is a finding of fact, it must be set aside as 'clearly erroneous' [citations omitted]." *Fitchburg Housing Authy.* v. *Board of Zoning Appeals of Fitchburg,* 380 Mass. 869, 873 (1980). The fact that interns reside at the facility "does not negate its educational purpose." *Ibid.*

Education has been long recognized in the courts of this Commonwealth as a "broad and comprehensive term." *Fitchburg Housing Authy.* v. *Board of Zoning Appeals of Fitchburg,* 380 Mass. at 874, citing *Mount Hermon Boys' School* v. *Gill,* 145 Mass. 139, 146 (1887). *The Bible Speaks* v. *Board of Appeals of Lenox,* 8 Mass. App. Ct. at 29-30. Dynamy's program, including its residential component, see note 2, *supra,* falls clearly within the definition of education accepted in *Mount Hermon* and approved in *Fitchburg,* namely, "the process of developing and training the powers and capabilities of human beings" and preparing persons "for activity and usefulness in life", *Mount Hermon,* 145 Mass. at 146. See also *Harbor Schools, Inc.* v. *Board of Appeals of Haverhill,* 5 Mass. App. Ct. 600, 605 (1977). Those in charge of Dynamy consider the residential aspect of its program central to its educational goals, and although such views are not conclusive, they are entitled to due weight. *Trustees of Phillips Academy* v. *Andover,* 175 Mass. 118, 124-125 (1900). *Emerson* v. *Trustees of Milton Academy,* 185 Mass. 414, 415 (1904).

Moreover, such views are consistent with the English and American tradition of higher education, where residential living is deemed an integral part of the learning experience. *President & Fellows of Harvard College* v. *Cambridge*, 175 Mass. 145, 146 (1900) (tax case). *Yale Univ.* v. *New Haven*, 71 Conn. 316, 327 (1899) (tax case). See *Trustees of Phillips Academy* v. *Andover*, 175 Mass. at 125 (tax case). See also *Trustees of Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599, 604 (1868) (tax case); *Radcliffe College* v. *Cambridge*, 350 Mass. 613, 618 (1966) (zoning case). See generally Annot. 64 A.L.R.3d 1087 (1975). This tradition is significant in interpreting the term "educational purposes" in G. L. c. 40A, § 3 (cf. *Worcester* v. *New England Inst. & New England Sch. of Accounting, Inc.*, 335 Mass. 486, 492-493 [1957]), and we note that where the Legislature has intended to permit a city to restrict the use of land or structures for educational purposes, it has done so with specificity. See, e.g., St. 1979, c. 565, § 1.

The Legislature did not intend to enable a city or town to "exercise its preference" as to what kind of educational uses "it will welcome," *The Bible Speaks, supra* at 33, or "to impose special permit requirements . . . on legitimate educational uses which have been expressly authorized to exist as of right in any zone." *Id.*

The judgment is reversed, and the case is remanded to the Superior Court for the entry of a new judgment dismissing the plaintiff's action.

*So ordered.*