WHITINSVILLE RETIREMENT SOCIETY, INC. *vs.* TOWN OF
NORTHBRIDGE.

Worcester. March 7, 1985. — May 8, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Zoning,* Educational use. *Land Court,* Jurisdiction. *Words,* "Educational
purposes."

Proposed uses of land by the owner of a nonprofit nursing home did not
constitute an educational purpose which would entitle the owner to
exemption under G. L. c. 40A, § 3, from the prohibitions and limitations
imposed by a town's zoning by-law. [759-761]

The Land Court lacked jurisdiction under either G. L. c. 240, § 14A, or
c. 185, § 1 (*j*½), to entertain a claim which sought a determination
whether a landowner's proposed use of its property was exempt from
the provisions of a town's zoning by-law by virtue of a certain special
permit, since such determination involved the effect of the special permit
rather than the validity of the by-law or the application of the by-law
to its land. [761-763]

CIVIL ACTION commenced in the Land Court Department
on December 30, 1982.

The case was heard by *William I. Randall,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Jerry E. Benezra* for the defendant.

*James F. Bergin* for the plaintiff.

ABRAMS, J. The defendant, the town of Northbridge, appeals
from a judgment that determined that the proposed use of land
owned by the plaintiff, the Whitinsville Retirement Society,
Inc., constituted and educational purpose within the meaning
of G. L. c. 40A, § 3, and is not subject to any prohibition or
limitation imposed by the Northbridge zoning by-law. The
town asserts that a judge of the Land Court erred in finding
that the plaintiff operated a nursing home facility for educa-
tional purposes and in ruling that he had subject matter juris-

diction under G. L. c 185, § 1 (*j*½), to determine whether the plaintiff's special permit exempted it from the Northbridge zoning by-law. We agree with the town on both grounds. We reverse.

We summarize the facts as found by the judge. The plaintiff, a nonprofit corporation, received a special permit in 1975 to use the existing premises, a 9.05-acre lot, for the housing, shelter, and care of retired persons and to allow for the eventual construction of additional buildings for such use. By 1977, a "Congregate Living" facility in the original building accommodated nine to ten ambulatory elderly persons with individual bedrooms and a shared dining room and living room.

In 1979, the plaintiff requested a building permit for an "Independent Living" facility to be located on a portion of the 9.05 acres that would contain twenty-four efficiency apartments for the elderly. The building inspector refused to issue a permit unless the plaintiff obtained a variance or special permit. The Northbridge board of appeals (board) refused the plaintiff a variance that year, but the next year the Department of Community Affairs granted a building permit for the "Independent Living" facility to the plaintiff. In July, 1981, the building inspector denied the plaintiff building permits to construct a nine-room addition to its "Congregate Living" facility and a forty-one bed nursing home on the ground that a special permit was needed.

The plaintiff brought an action in the Superior Court in December, 1981, which was dismissed, evidently because of failure to exhaust administrative remedies. The plaintiff filed an appeal from the building permit denials to the board in May, 1982, which was denied on the ground that the appeal period had expired ten months earlier. The plaintiff then filed a second complaint in the Superior Court, which also was dismissed. In December, 1982, the plaintiff filed an action in the Land Court under G. L. c. 240, § 14A, and G. L. c. 185, § 1 (*j*½).

The plaintiff's plan, as found by the judge, envisages using those elderly persons within the complex who are in good physical and mental condition to help others living there who are not so well off. The plaintiff planned to have others within

and outside the complex aid the elderly residents psychologically and physically by teaching them crafts and providing entertainment and stimulus for them.

The plaintiff sought two determinations in the Land Court: first, that it was a nonprofit corporation using its land as a public or community facility for an educational purpose within the meaning of G. L. c. 40A, § 3, and therefore not subject to any prohibition or limitation imposed by the Northbridge zoning by-law; and second, that its land was exempt from the provisions of the Northbridge zoning by-law by virtue of its 1975 special permit. In response to the two issues that are the subject of this appeal, the defendant argued that the plaintiff is not operating a facility for educational purposes and that the Land Court lacked subject matter jurisdiction. The judge entered a judgment for the plaintiff, ruling that the plaintiff's proposed use of its land constituted an educational purpose and is not subject to prohibition or limitation by the Northbridge zoning by-law.

1. *Educational purpose.* The plaintiff argues that the judge correctly defined the proposed project as having an "educational purpose" within the meaning of G. L. c. 40A, § 3,[1] and is therefore not subject to prohibition or limitation by the Northbridge zoning by-law. We agree with the judge that "[e]ducation is a broad and comprehensive term. It has been defined as 'the process of developing and training the powers and capabilities of human beings.' To educate, according to one of Webster's definitions, is 'to prepare and fit for any calling or business, or for activity and usefulness in life.' Education may be particularly directed to either the mental, moral, or physical powers and faculties, but in its broadest and best sense it relates to them all." *Mount Hermon Boys' School* v. *Gill,*

---

[1] General Laws c. 40A, § 3, as amended through St. 1983, c. 91, provides in pertinent part: "No zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures for religious purposes or for educational purposes on land owned or leased . . . by a nonprofit educational corporation; provided, however, that such land or structures may be subject to reasonable regulations . . . ."

145 Mass. 139, 146 (1887). Nevertheless the words "educational purpose" are "everyday words and should be interpreted 'according to the common and approved usages of the language . . . without enlargement or restriction and without regard to . . . [the court's] own conceptions of expediency.' " *Moulton* v. *Building Inspector of Milton*, 312 Mass. 145, 148 (1942), quoting *Commonwealth* v. *S.S. Kresge Co.*, 267 Mass. 145, 148 (1929). The issue is whether the plaintiff's project "is operated primarily for an educational purpose." *Cummington School of the Arts, Inc.* v. *Assessors of Cummington*, 373 Mass. 597, 603 (1977).

The judge found that the plaintiff's plan would entail care for approximately 100 elderly persons — some in efficiency apartments, some in a "Congregate Living" facility, and forty-one in the "Nursing Home." He found that when the nursing home was built it would "be staffed by professional nursing personnel and have medical attendants on call."

The judge further found that the plaintiff's plan "is to provide psychological help. . . . The plan envisages the use of the elderly persons within the complex in good physical and mental condition to help others living there [who are] not so well off. It is planned to have others in the complex itself and from the outside work with these depressed and elderly to aid them psychologically as well as physically." Persons from outside the complex would come in "to teach crafts, to provide entertainment and stimulus to the persons confined in the complex." The judge concluded that there was "an element of education" in these plans and that the assistance being given by those who are better off physically and mentally to others who are less fortunate is in part an educational project.

The judge's findings do not support the conclusion that the primary or dominant purpose of the proposed nursing home facility would be educational. *Cummington School of the Arts, Inc.* v. *Assessors of Cummington, supra* at 603. The judge found, "While the campus concept as a whole is a scheme primarily to care for the physical needs of persons in their later years, there is an element of education therein." "Of course, in a broad sense, anything taught might be considered, to a

greater or less degree, educational." See *Kurz* v. *Board of Appeals of N. Reading*, 341 Mass. 110, 113 (1960). Merely an "element of education," however, provided not by a formal program or trained professionals, but only informally gleaned from the interplay among residents of the nursing home community, is not within the meaning of "educational purpose" pursuant to G. L. c. 40A, § 3.[2] Such an interpretation of the words "educational purpose" is not within the plain meaning of G. L. c. 40A, § 3. See *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984); *Commonwealth* v. *Vickey*, 381 Mass. 762, 767 (1980). We conclude that there was error in the judge's determination that the purpose of the nursing home was "educational."[3]

2. *Subject matter jurisdiction.* In its complaint the plaintiff requested a declaration that if the purpose of the nursing home were not "educational," the plaintiff's land is still exempt from the provisions of the Northbridge zoning by-law by virtue of its 1975 special permit. The plaintiff rested its request for relief on G. L. c. 240, § 14A,[4] and G. L. c. 185, § 1

---

[2] The evidence at the hearing indicates that the plaintiff obtained a certificate of need from the Department of Public Health. Further, the plaintiff's own witness said that there were no facilities and no structured programs of instruction or training (other than perhaps a crafts program). There was no evidence that the plaintiff sought or requested educational programs or funds from the local school committee, adult education center or the board of education.

[3] The judge relied on several cases in support of his broad definition of educational purpose. These cases, however, are inapposite. They concern institutions which involved *teachers* and specialized training for children or adults with special problems and whose "dominant activity [would] be educational." See *Fitchburg Hous. Auth.* v. *Board of Zoning Appeals of Fitchburg*, 380 Mass. 869, 874-875 (1980), and *Harbor Schools, Inc.* v. *Board of Appeals of Haverhill*, 5 Mass. App. Ct. 600, 604-605 (1977). In *Fitchburg, supra* at 875, we based our ruling in part on the fact that "[t]he proposed facility would fulfil a significant educational goal in preparing its residents to live by themselves outside the institutional setting." In the instant case, however, the judge did not find a goal that reasonably could be described as educationally significant.

[4] In full, G. L. c. 240, § 14A, as amended by St. 1975, c. 808, § 5, provides: "The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated,

(j½).[5] The town filed a motion to dismiss because it contended that the Land Court had no "jurisdiction over the subject matter" and because the "complaint fail[ed] to state a justiciable controversy."

The judge found "that the premises [of the plaintiff were] exempt from the provisions of the Zoning By-law by virtue of the 1975 Special Permit." There was no discussion in that section of the judge's rulings relating to a determination of the validity or extent of any municipal zoning ordinance, by-law, or regulation. Merely because the judge found that, based on the special permit, the Northbridge zoning by-law could not be enforced does not change the fact that the determination made was the effect of the 1975 special permit and not the validity of the Northbridge zoning by-law or the application of the by-law to the plaintiff's land. The plaintiff's claim therefore does not fall within the language of G. L. c. 240, § 14A, and G. L. c. 185, § 1 (j½).

The primary purpose of G. L. c. 240, § 14A, is to provide a procedure for a declaratory judgment that will resolve doubts

which shall not be open to objection on the ground that a mere judgment, order or decree is sought, for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter forty A or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of present or future structures thereon, including alterations or repairs, or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition. The right to file and prosecute such a petition shall not be affected by the fact that no permit or license to erect structures or to alter, improve or repair existing structures on such land has been applied for, nor by the fact that no architects' plans or drawings for such erection, alteration, improvement or repair have been prepared. The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not."

[5] General Laws c. 185, § 1 (j½), provides that the Land Court shall have exclusive jurisdiction pursuant to G. L. c. 240, § 14A, "to determine the validity and extent of municipal zoning ordinances, by-laws and regulations."

relating to by-law restrictions or the requirements of a zoning ordinance. *Addison-Wesley Publishing Co.* v. *Reading*, 354 Mass. 181, 184-185 (1968). That statute provides in pertinent part: "The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not." G. L. c. 240, § 14A. The evil to be remedied is a situation where someone may be forced to invest in land before being able to find out whether there are restrictions. See *Harrison* v. *Braintree*, 355 Mass. 651, 654 (1969). No such situation exists here. Rather, the plaintiff here is seeking to sidestep an appeal to the Northbridge board of appeal, and, if need be, then to the Superior Court. See G. L. c. 40A, §§ 8, 14, 17. General Laws c. 185, § 1 (*j½*), may not be used to avoid the normal appellate route required in zoning disputes.[6]

Relying on *Banquer Realty Co.* v. *Acting Bldg. Comm'r of Boston*, 389 Mass. 565, 570 (1983), the judge concluded that he had jurisdiction to determine the force and effect of the plaintiff's special permit. In *Banquer* we held that the Land Court had jurisdiction under G. L. c. 240, § 14A, if the case concerned the validity of or the extent to which a zoning code affected a proposed use of property. Here, the plaintiff has not sought a determination as to the validity of the Northbridge zoning by-law or the extent to which the zoning by-law affects its proposed use of the premises, but rather a determination of the extent of its 1975 special permit. *Banquer Realty Co.* v. *Acting Bldg. Comm'r of Boston, supra*, therefore does not support a claim of jurisdiction in the Land Court in the instant case. See *Pitman* v. *Medford*, 312 Mass. 618, 620 (1942). The judge should have granted the town's motion to dismiss for lack of subject matter jurisdiction.

In summary, we hold that the plaintiff's proposed project is not exempt from the operation of the Northbridge zoning by-law under G. L. c. 40A, § 3, as a nonprofit organization

---

[6] We express no view as to the correctness of the judge's determination that the special permit exempts the plaintiff's land from the Northbridge zoning by-law.

using its premises for "educational purposes," and that the Land Court lacked jurisdiction to determine the validity and effect of the plaintiff's special permit pursuant to G. L. c. 240, § 14A, and G. L. c. 185, § 1 ($j\frac{1}{2}$).

*Judgment reversed.*