GARDNER-ATHOL AREA MENTAL HEALTH ASSOCIATION, INC.
& another[1] *vs.* ZONING BOARD OF APPEALS OF GARDNER
& others.[2]

Worcester.  May 6, 1987. — October 8, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Zoning,* Educational use. *Statute,* Construction. *Mental Health. Words,*
"Nonprofit educational corporation."

A nonprofit corporation need not have education as its dominant purpose or
primary activity to qualify as a "nonprofit educational corporation" to
be exempt, under G. L. c. 40A, § 3, from municipal zoning restrictions
on its use of land or structures for educational purposes, where educa-
tional activities are among the corporate purposes set forth in its articles
of organization. [15-16] LYNCH, J., with whom NOLAN, J., joined,
dissenting.

CIVIL ACTION commenced in the Gardner Division of the
District Court Department on January 28, 1986.

The case was heard by *Matthew R. McCann,* J.

The Supreme Judicial Court granted requests for direct ap-
pellate review.

*Martin Ames* for Gardner-Athol Area Mental Health Associ-
ation, Inc.

*Suzanne E. Durrell,* Assistant Attorney General, for Depart-
ment of Mental Health.

*John B. Barrett,* City Solicitor (*Anthony E. Penski,* Assistant
City Solicitor, with him) for the defendants.

*Kenneth N. Margolin,* for Massachusetts Association of Pri-
vate 766 Schools, Inc., & another, amici curiae, submitted a
brief.

---

[1] Department of Mental Health, intervener.

[2] Fifty-seven Gardner residents and the city's building inspector.

*Robert D. Fleischner, Matthew Engel, William G. Crane, Robert Weber, David Engle, Anna Alford & Deborah Filler,* for Massachusetts Association for Mental Health, Inc., & others, amici curiae, submitted a brief.

WILKINS, J. The Gardner-Athol Area Mental Health Association, Inc. (GAAMHA), supported by the Department of Mental Health (department), argues that, because GAAMHA is a "nonprofit educational corporation" and because its proposed use of premises in Gardner as a residential care facility would be a use of the premises for "educational purposes," the Gardner zoning ordinance may not lawfully forbid GAAMHA's proposed use of premises for a residential care facility for four adults with mental disabilities. GAAMHA relies on the provision in G. L. c. 40A, § 3 (1986 ed.), which denies to a municipality the right to restrict by zoning "the use of land or structures . . . for educational purposes . . . by a nonprofit educational corporation."

A District Court judge, deciding GAAMHA's appeal (G. L. c. 40A, § 17) from a decision of the Gardner board of appeals (board), agreed that GAAMHA's proposed use was for educational purposes but that GAAMHA was not a "nonprofit educational corporation" within the meaning of G. L. c. 40A, § 3. We agree that the proposed use would be for educational purposes, an issue which needs no further discussion. See *Fitchburg Hous. Auth.* v. *Board of Zoning Appeals of Fitchburg,* 380 Mass. 869, 874 (1980); *Commissioner of Code Inspection of Worcester* v. *Worcester Dynamy, Inc.,* 11 Mass. App. Ct. 97, 99-100 (1980). Cf. *Whitinsville Retirement Soc'y* v. *Northbridge,* 394 Mass. 757, 760 (1985) (primary purpose of a proposed nursing home not educational). We disagree, however, with the judge's conclusion that GAAMHA is not a nonprofit educational corporation. Because GAAMHA is a nonprofit educational corporation, the Gardner zoning ordinance may not lawfully restrict GAAMHA's proposed use of the premises.[3]

---

[3] Such a use would be lawful under the zoning ordinance if the board were to grant a special permit. GAAMHA asserts that it has a right to use the premises as proposed and that use cannot properly be regulated by the zoning ordinance.

We summarize relevant facts found by the judge. GAAMHA is a nonprofit corporation organized pursuant to G. L. c. 180. Its articles of organization state its purposes as follows: "To cooperate with the State and National Associations for Mental Health and other Mental Health Associations as well as State and other governmental agencies to promote a program of mental health education; to provide means and facilities to aid in the prevention, care and treatment of mental health disorders; to aid in the restoration of mental health and to aid in the rehabilitation of the mentally handicapped, and to do all things necessary and incidental to the carrying out of these purposes." GAAMHA operates programs for the mentally ill and mentally retarded, in addition to providing vocational training and alcohol dependence programs. GAAMHA operates an outpatient clinic and recovery home for alcoholics.

In October, 1985, GAAMHA leased a single family dwelling on Edgell Street in Gardner for use as a residential care facility for four adults with mental disabilities, pursuant to a program funded by the Commonwealth. The residents would be taught daily living, as well as vocational skills, with the goal of preparing them for more independent living. Shortly before the lease was executed, an Edgell Street resident wrote to the building inspector questioning the proposed use of the property. The building inspector answered that the proposed use would be exempt from the application of the Gardner zoning ordinance by virtue of G. L. c. 40A, § 3. Numerous residents of the area appealed the building inspector's decision to the board. The board received advice from the city solicitor that he had advised the building inspector that the city could not prohibit the proposed use. The board nevertheless reversed the building inspector's ruling in a decision that did not state the board's reasons for its decision.[4]

On GAAMHA's appeal the department intervened, and the judge, concluding that education appeared to play a subordinate

---

[4] The board's decision recited certain views apparently expressed by its chairman, none of which concerned the issue whether GAAMHA was a nonprofit educational corporation.

401 Mass. 12                                                    15

Gardner-Athol Area Mental Health Association *v.* Zoning Board of Appeals of Gardner.

role in GAAMHA's activities and that GAAMHA was not a nonprofit educational corporation, affirmed the board's decision. GAAMHA and the department appealed, and we allowed their applications for direct appellate review.

GAAMHA is a nonprofit corporation. The issue is whether it is a nonprofit *educational* corporation. GAAMHA's corporate purposes, set forth above, surely include educational purposes. Cooperation with private associations and governmental agencies "to promote a program of mental health education," "to aid in the restoration of mental health and to aid in the rehabilitation of the mentally handicapped" are clearly educational purposes. Rehabilitation surely falls within the meaning of education. See *Harbor Schools, Inc.* v. *Board of Appeals of Haverhill,* 5 Mass. App. Ct. 600, 604-605 (1977).

There is nothing in G. L. c. 40A, § 3, as the board argues, that requires that education be the dominant purpose or primary activity of a nonprofit corporation in order that it may qualify as a nonprofit educational corporation under § 3. We have no authority to rewrite the statute to insert such a requirement.[5] Acceptance of the concept that the dominant or principal activity of such a corporation must be educational would require the investigation and assessment of detailed facts not readily available to one administering local zoning regulations and presumably that duty would be a continuing one.[6] The proper test in deciding whether a nonprofit corporation is an educa-

---

[5] There is no legislative history to support such a view. Indeed, at the time § 3 took its present form in 1975 (see St. 1975, c. 808, § 3), the existence of the Commonwealth's policy of continuing deinstitutionalization of mental health patients suggests that there was no legislative intention to increase the right of municipalities to restrict residential facilities for mentally handicapped people. Surely under prior law (see G. L. c. 40A, § 2, as amended through St. 1959, c. 607, § 1) the use proposed in this case could not have been regulated by local zoning provisions. See *Fitchburg Hous. Auth.* v. *Board of Zoning Appeals of Fitchburg,* 380 Mass. 869 (1980).

[6] If a nonprofit corporation once primarily in education (and protected by § 3) should increase its other authorized nonprofit activities so that they became primary, on the board's theory the corporation would lose its § 3 protection.

tional one is whether its articles of organization permit it to engage in educational activities, a question easily answered by a review of documents filed with the State.

There is no reason to find uncertainty in § 3, thus arguably justifying adding a requirement that the corporation's activities be primarily in education. See *Worcester County Christian Communications, Inc.* v. *Board of Appeals of Spencer,* 22 Mass. App. Ct. 83, 87 (1986) ("all that is required is that the plaintiff be a nonprofit corporation intending to use its land or structures for religious or educational purposes"). The word educational in the phrase "nonprofit educational corporation" is not made superfluous by our construction of the statute. Not every word in a statute need carry a heavy load. It is enough to say that "educational" in the phrase "nonprofit educational corporation" means that the proposed educational activities must be within the corporate purposes of the nonprofit corporation. That this states the obvious — no corporation should act ultra vires — does not deprive the word "educational" of any meaning in § 3 as written. Thus, there is no warrant for injecting the word "primarily" in § 3 for the asserted purpose of giving meaning to the word "educational" which it could not otherwise have.

The judgment of the District Court is vacated. Judgment shall be entered reversing the decision of the board of appeals and affirming the determination of the building inspector. First, however, the issue whether GAAMHA and the department are entitled to costs against the board must be decided. See G. L. c. 40A, § 17, fourth par. (1986 ed.) (no costs are allowed against the board "unless it shall appear to the court that the board . . . in making the decision appealed from acted with gross negligence, in bad faith or with malice"). The judge deferred this question and, when he decided the case in favor of the board on the merits, he concluded that he did not have to decide whether to award costs against the board.

*So ordered.*

LYNCH, J. (dissenting, with whom Nolan, J., joins). While neither G. L. c. 40A, nor G. L. c. 180, under which GAAMHA is incorporated, defines the term "nonprofit educational corporation," "[i]t is not to be assumed that words in a statute have no force or effect." *Gillam* v. *Board of Health of Saugus,* 327 Mass. 621, 623 (1951). I agree with the court that, under the predecessor to § 3 (the former c. 40A, § 2, as amended through St. 1959, c. 607, § 1, superseded by St. 1975, c. 808, § 3), "the use proposed in this case could not have been regulated by local zoning provisions." *Ante* at 15 n.5. The difficulty is that the current § 3 requires not only that there be an "educational purpose," as did the predecessor section, but also that the property be owned or leased by a "nonprofit educational corporation." In construing statutory language, we have stated, "None of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature." *Bolster* v. *Commissioner of Corps. & Taxation,* 319 Mass. 81, 84-85 (1946). A "salient principle of statutory construction" is "that the statutory language itself is the principal source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977).

The court concludes that the educational use exemption now contained in G. L. c. 40A, § 3, merely requires that the owner or lessor be a "nonprofit corporation" permitted to engage in educational activities. In my view, such an interpretation eliminates the dual requirement that there be both an educational purpose and an educational corporation. Thus it is contrary to the plain language of the statute and violative of the maxim that "no word in a statute should be considered superfluous." *International Org. of Masters, Mates & Pilots, Atlantic & Gulf Maritime Region* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.,* 392 Mass. 811, 813 (1984). If all the Legislature had intended for there to be immunity from local land use regulations was that a nonprofit corporation be permit-

ted to engage in educational activities no change in the statute would have been necessary since, as the court concedes, the change of language would merely be stating the obvious, i.e., that no corporation should act ultra vires. I agree with the trial judge that the applicable language of G. L. c. 40A, § 3, requires not only an educational use, but also that the owner or lessor of the property in question be a "nonprofit *educational* corporation" (emphasis added).

We have "long recognized 'education' as a 'broad and comprehensive term.'" *Fitchburg Hous. Auth.* v. *Board of Zoning Appeals of Fitchburg,* 380 Mass. 869, 874 (1980), quoting *Mount Hermon Boys' School* v. *Gill,* 145 Mass. 139, 146 (1887). However, while the term "education" may be broad and comprehensive, it is not without restriction. See, e.g., *Whitinsville Retirement Soc'y, Inc.* v. *Northbridge,* 394 Mass. 757, 760 (1985) (nursing home providing an "element of education" not within meaning of term "educational purpose" as used in G. L. c. 40A, § 3); *Kurz* v. *Board of Appeals of N. Reading,* 341 Mass. 110 (1960) (dancing school not an "educational use" for zoning purposes). We have also concluded that the reference in G. L. c. 40A, § 3, to "educational purpose" requires that the primary or dominant purpose of the proposed use be educational. *Whitinsville Retirement Soc'y, supra* at 760. Since the Legislature has used the term "educational" twice in the same sentence in G. L. c. 40A, § 3 ("educational purpose" and "educational corporation"), it should be given the same meaning in both contexts. See *Building Inspector of Mansfield* v. *Curvin,* 22 Mass. App. Ct. 401, 403 (1986).

Here the trial judge concluded that GAAMHA was "primarily and predominantly a social service corporation, not an educational corporation." The judge noted that GAAMHA's articles of organization provide in part that it is a nonprofit corporation formed to promote a program of mental health education. The trial judge also reviewed the broad scope of activities undertaken by GAAMHA and concluded that "[i]ts role as an educator is actually ancillary to the broader purposes of its charter and to the actual scope of its activities which wander somewhat beyond the literal language of the charter. Its under-

takings in the Gardner-Athol area encompass a wide spread of social service endeavors in which education appears to play a subordinate rather than a predominant role."

I would conclude that based on the record in this case it was not error for the judge to rule that GAAMHA was not an "educational corporation" for the purposes of G. L. c. 40A, § 3. I, therefore, respectfully dissent.