Hely, J.
A.Introduction
The Brockton Coalition for the Homeless, Inc., is a charitable corporation. The Coalition obtained a building permit from the Stoughton Building Commissioner to renovate a former nursing home in order to operate the facility as a temporary shelter for seventeen homeless families. Stephen E. Goulston is a neighbor whose property abuts the Coalition property. Mr. Goulston appealed the issuance of the building permit to the Stoughton Zoning Board of Appeal. The Board issued a decision revoking the Coalition’s building permit. The Coalition has applied to the court for judicial review under G.L.c. 40A, Sec. 17.
One of the main purposes for the Coalition’s proposed family shelter is educational. The proposed educational use is therefore exempt under the Dover Amendment, G.L.c. 40A, Sec. 3, par. 2, first sentence, from the ordinary zoning by-law requirements. The court must instead assess the particular facts concerning the proposed use and apply the special standards expressed in G.L.c. 40A, Sec. 3, par. 2, first sentence, and in the case law under the Dover Amendment. Applying these standards, the Board’s decision revoking the Coalition’s building permit must be annulled.
The findings herein are based on the evidence and the reasonable inferences that the court has drawn from the evidence. The court finds the testimony of Dennis P. Carmen to be fair, accurate and highly reliable. His testimony is adopted as part of the court’s findings.
B.The Brockton Coalition for the Homeless, Inc.
The Brockton Coalition for the Homeless, Inc. is a Massachusetts non-profit corporation. Its purposes and operations are exclusively charitable.
The Coalition’s articles of organization accurately state its purposes and accurately describe its actual operations. The articles of organization state that the Coalition’s purposes are:
... to provide shelter on a temporary basis for homeless families and individuals, providing educational training to this group, to help in the securing of employment, to provide access to health care when necessary, to aid in the obtaining of permanent housing thereby stabilizing the individual or family unit, and to do all acts necessary and incidental to the carrying out of these purposes
The Coalition is a “nonprofit educational corporation” as that term is used in G.L.c. 40A, Sec. 3, par. 2. Garner-Athol Area Mental Health Association, Inc. v. Zoning Board of Appeals of Garner, 401 Mass. 12 (1987). Its specific educational activities and purposes regarding the proposed Stoughton shelter will be further described below.
C.The Coalition’s Proposed Family Shelter and Its Educational Purpose
The Coalition purchased the land and building of a nursing home at 94 Prospect Street, Stoughton. The facility is no longer operated as a nursing home. The nursing home had a capacity of fifty-nine residents. The Coalition applied for a building permit from the Town of Stoughton to renovate the bathrooms, kitchens and stairways and to make other interior alterations in the building in order to operate it as a temporary educational and residential shelter for families. The shelter will be used exclusively for families that consist of single mothers with children. The proposed use would not increase the number of occupants in the building. The proposed use would not alter the bulk or height of the structure or the setbacks and open space. After considerable planning, discussions and accommodations, the Stoughton Building Commissioner issued a building permit for this rehabilitation and use of the facility. The building permit was issued on October 23, 2002.
Stephen E. Goulston’s property abuts the Coalition property. Mr. Goulston appealed the issuance of the building permit to the Stoughton Zoning Board of Appeal. The Board conducted a hearing on Mr. Goulston’s appeal on December 12, 2002. The Board *555 filed a decision on January 17, 2003, revoking the Coalition’s building permit. The Board’s decision precludes the building commissioner from issuing a certifícate of occupancy. By the date of the Board’s decision, the Coalition had completed virtually all of the rehabilitation work on the facility as authorized by the building permit. The Coalition applied to the Superior Court for judicial review under G.L.c. 40A, Sec. 17.
At the time of the Board’s hearing on Mr. Goulston’s appeal, the Coalition’s proposal was to use the facility for the temporary residence of not more than seventeen families. In its answers to interrogatories in the present case, the Coalition has voluntarily modified its proposal to reduce the number of occupants to not more than sixteen families.
The court finds from the evidence that a primary and dominant purpose of the proposed facility is educational. For this reason, the court must apply the limitations on the local board’s authority contained in G.L.c. 40A, Sec. 3, par. 2, first sentence (the Dover Amendment), and in the Massachusetts appellate court decisions that interpret and apply this provision.
As shown by the evidence, the term shelter is somewhat misleading. Temporary housing is only one part of the assistance that the Coalition will be providing to homeless families at the Stoughton facility. The Coalition already operates a similar shelter for thirteen homeless families in Middleborough called Conway House. The Coalition will operate the Stoughton facility in the same way as it has been operating Conway House since 1998. The Coalition’s purpose for Conway House and for the Stoughton shelter is to assist homeless families in obtaining permanent housing and in becoming economically and socially independent. The Coalition seeks to achieve this by providing temporary shelter with education. The Coalition has learned that it is fruitless to provide shelter without education. The Coalition has learned that temporary shelter alone would do little to help a homeless family become independent and to avoid chronic homelessness.
The Coalition’s educational programs that will be provided at the Stoughton facility are the same as the programs already being provided at Conway House in Middleborough. Homeless families are commonly impeded by substantial deficits in education and life skills regarding housing, employment, nutrition, school, parenting, health care, hygiene and personal finance. The Coalition’s educational programs seek to educate, train and guide homeless families in all of these areas.
The Coalition educational programs also teach homeless mothers and children better ways to cope with family and personal conflicts and domestic violence. An important part of the Coalition educational program is to help homeless families learn how to more effectively participate in family, social and community group activities and support programs. The Coalition educational program will include classes, group activities and individual guidance and assistance on all of these educational topics. See Gardner Athol Area Mental Health Association, Inc. v. Zoning Board of Appeals of Gardner, 401 Mass. 12, 15 (1987) (“Rehabilitation surely falls within the meaning of education”).
The Coalition educational programs will take place at the Stoughton facility a minimum of five days a week. The Stoughton building will include a classroom and a computer training area. There will be classes and individual coaching and guidance on finding and keeping long-term housing. There will be job training including computer skills and skills for job applications and interviews.
As at Middleborough, life for the temporary residents of the Stoughton facility will be highly structured and regulated. The Coalition imposes a lot of rules. There are daily schedules. A primary purpose of the rules and schedules is ensure that the residents, both mothers and children, obtain the maximum participation in the Coalition educational programs. Temporary shelter is provided, but education in life skills and employment skills to obtain family independence is a primary and dominant purpose of the Coalition’s family shelter program.
Mothers are taught that they must get their school-age children up, fed and out to school every school day. Poor school attendance and learning are common problems for children whose lives are disrupted by homelessness. The Coalition educational program requires mothers to help their children with a daily routine for school homework.
The Coalition shelters require all residents to be in the shelter and in bed by certain times every day. Visits from friends and family are regulated in timing and duration. Parking problems involving visitors have not occurred at Conway House and they are not likely to occur at the Stoughton facility. The Coalition rules and schedules are not just for convenience and good order. The Coalition considers its rules and schedules to be essential parts of its educational programs. The rules and schedules are designed to teach families how to become independent and to avoid future homelessness.
Adult residents at Coalition family shelters are required to consistently attend and participate in the Coalition educational programs. Non-attendance is not an option. Residents who will not participate in the educational programs are discharged from the family shelters. All adult residents who have not graduated from high school or obtained an equivalency diploma are required to attend high school equivalency classes and to work steadily toward obtaining the diploma. Shelter staff provide scheduled child activities so that the mothers can attend classes and other educational programs.
*556 As part of the training in personal financial management, residents are required to report any income and to establish regular savings programs. This serves the dual purpose of monitoring the residents’ financial eligibility and training them to husband their resources with the goal of independent living.
With the exception of a part-time maintenance person, the staff persons at the Coalition’s Stoughton shelter will be assisting in various ways with the educational, training and guidance programs for the residents, even if the job title may not have the word teacher in it. As in Fitchburg Housing Authority v. Board of Zoning Appeals of Fitchburg, 380 Mass. 869, 874-75 (1980), the Coalition’s proposed facility in Stoughton “would fulfil a significant educational goal in preparing its residents to live by themselves outside the institutional setting.”
For all the reasons stated above, the court finds from the particular facts of this case that education of the temporary residents is a primary and dominant purpose for the Coalition’s proposed use of the Stoughton facility. See Fitchburg Housing Authority, supra; Watros v. Greater Lynn Mental Health and Retardation Association, Inc., 421 Mass. 106, 115 (1995) (residence for retarded persons); Gardner-Athol Area Mental Health Association, Inc. v. Zoning Board of Appeals of Gardner, 401 Mass. 12 (1987) (residential care facility for adults with mental disabilities); Campell v. City Council of Lynn, 32 Mass.App.Ct. 152, 154 (1992) (group residence for elderly, mentally ill persons); compare Whitinsville Retirement Society, Inc. v. Northbridge, 394 Mass. 757 (1985) (nursing home and residence for elderly did not have sufficient educational purpose).
D. The Board’s Decision and the Application of the Dover Amendment Standards
The Dover Amendment has been a statute in effect since 1950. The pertinent current language of the statute is in G.L.c. 40A, Sec. 3, par. 2, first sentence:
No zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures ... for educational purposes on land owned or leased by ... a nonprofit educational corporation; provided, however that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements.
A municipality may not “through the guise of regulating bulk and dimensional requirements under the enabling statute, proceed to ‘nullify’ the use exemption permitted to an educational institution.” Trustees of Boston College v. Board of Aldermen of Newton, 58 Mass.App.Ct. 794, 800 (2003). In addition to the rule against nullification, the local board and the court must also consider the reasonableness of the particular restriction. This will depend on the particular facts of each case and the particular educational use proposed by the nonprofit corporation. In reviewing a restriction, the court “should consider whether the requirement sought to be applied takes into account ‘the special characteristics of [the exempt] use.’ ” A zoning requirement “that results ‘in something less than nullification of a proposed [exempt] use may be unreasonable within the meaning of the Dover Amendment.’ ” Martin v. Corporation of the Presiding Bishop of Church of Jesus Christ of Latter Day Saints, 434 Mass. 141, 151 (2001); Rogers v. Norfolk, 432 Mass. 374, 378 (2000); Trustees of Tufts College v. Medford, 415 Mass. 753, 758-59 & n. 6 (1993).
The Coalition’s proposed facility is in a Residential RU district. Generally a multi-family dwelling is not permitted in a Residential RU district except by special permit for a two-family dwelling or for conversion of a dwelling to a four-family dwelling if the structure existed before September 8, 1970. By-Law, Sec. V(D).
The Board did not attempt to impose specific conditions tailored to the Coalition’s proposed use of the facility for an educational and residential shelter. The Board simply voted to revoke the building permit and stated its reasons for doing so. The Board’s first reason for revoking the building permit was that “the owners of the property are not in compliance with the local zoning regulations.” Decision at 1. This seems to be a reference to the nature of the Coalition facility as a multi-family dwelling. Similarly, the Board’s decision states that the Coalition’s proposed use will be a substantial alteration of a non-conforming use and that therefore the proposed facility should be subject to all the ordinary restrictions in the by-law.
These points in the Board’s decision misconstrue the effect of the Dover Amendment. The Dover Amendment exempts an educational residential facility from prohibitions on particular uses in particular districts. The Dover Amendment also exempts an educational residential facility from prohibitions that would otherwise apply to alterations to prior nonconforming uses. Watros v. Greater Lynn Mental Health and Retardation Association, Inc., 421 Mass. 106, 115 (1995).
As reasons for the revocation, the Board decision also states that there is “inadequate parking for the anticipated number of families” and that the “parking area is too small to allow both parking and access for emergency vehicles.” Access for emergency vehicles is unquestionably a permissible issue for a local board to consider in fashioning a reasonable restriction. The Board in this case did not impose any reasonable conditions to address emergency vehicle access. This is not permissible under G.L.c. 40A, Sec. 3, par. 2, first sentence, and the governing case law. It amounts to a nullification of the proposed educational residential facility. See Martin v. Corporation of the Presiding Bishop of Church of Jesus Christ of Latter Day Saints, 434 Mass. 141, 151 (2001); Trustees of Tufts College *557 v. Medford, 415 Mass. 753, 758-59 & n.6 (1993); Trustees of Boston College v. Board of Aldermen of Newton, 58 Mass.App.Ct. 794, 800 (2003).
This does not mean that the Board cannot impose any parking restriction directed toward emergency vehicle access. It does mean that a parking restriction must avoid nullification and must satisfy the reasonableness test considering “the special characteristics of [the exempt] use.” Martin, supra.
Conway House, the Coalition’s family shelter in Middleborough, has been operating since 1998 with no significant parking complaints or difficulties. Conway house has thirteen families and nine parking spaces. The Coalition makes no allotment of parking spaces for residents at Conway House. The Coalition proposes nine parking spaces for the Stoughton facility. There will be a maximum of sixteen families in the Stoughton facility, and none of the parking spaces will be specially allocated for residents. The Coalition’s actual experience is that the homeless single mothers who are eligible for temporary residence at the Coalition shelters are too poor to own cars. The financial eligibility requirements imposed by the Massachusetts Department of Transitional Assistance make it nearly impossible for a mother who owns an operating motor vehicle to be eligible for temporary residence in a family shelter operated by the Coalition. Since 1998, the Coalition has encountered only one resident in Conway House that briefly owned a motor vehicle. The opinion of the defendants’ parking expert is not nearly as reliable as the actual experience of the Coalition in running a family shelter.
Deputy Fire Chief David Jardin expressed a specific and very limited concern about access for fire and emergency vehicles on the north side of the building toward the northeast comer where the two or three parking spaces closest to the rear are also closest to the building. There is also some concern about emergency vehicle access if cars are parked in the front semi-circular driveway, even though the Coalition has not designated this as a parking area. The court’s order will permit the Building Commissioner and the Zoning Board of Appeal to address this emergency vehicle access issue, if they deem it appropriate, by imposing reasonable conditions on the locations, parking restriction signs and markings for the Coalition’s proposed nine parking spaces.
To the extent that the Board’s decision is based on neighborhood parking concerns that are not related to emergency vehicle access, the facts established at the trial do not warrant the imposition of any additional parking requirements that are not specifically tailored to emergency vehicle access to the facility.
Stephen E. Goulston, Harold Curtis and Robert Sinclair are neighbors who live next to or near the Coalition property. They described in their testimony the residential character of their neighborhood. These residents did not state that they are opposed to the Coalition’s use of the property for a family shelter in the neighborhood. They did express their concerns that the parking would be inadequate for the number of people using the facility. Mr. Goulston, Mr. Curtis and Mr. Sinclair described the parking problems that they have observed in the neighborhood when the building was used as a nursing home.
The nursing home had an authorized maximum of fifty-nine residents. The Coalition’s proposed family shelter will have sixteen families with forty-eight to fifty-five residents. Because of the medical needs of nursing home residents, the ratio of staff to residents was much higher for the nursing home than it will be for the shelter. This was true for workday, night and weekend periods. Both a nursing home and a family shelter have visitors who visit the residents. There is no reason in the evidence to expect that the number of visitors to the family shelter for sixteen families will be greater than for the nursing home with fifty-nine residents. Institutional deliveries can reasonably be expected to be fewer for the shelter than for the nursing home in part because a nursing home generally serves all meals to the residents. The shelter families will be expected to do their own food purchasing and meal preparation, although teaching and assistance in this area is part of the shelter’s educational program.
The court finds that the proposed shelter for sixteen families with nine on-site parking spaces (one handicap, eight regular) will not have a harmful effect on parking and vehicle movement in the neighborhood in comparison with the fifty-nine resident nursing home that was previously operating on the same site.
The Board’s decision also expressed concerns about the amount of space for child play areas on the lot and the lack of a public sidewalk on Prospect Street in front of the site. Based on the evidence at the trial, the amount and locations of outdoor play space for children is reasonable and safe for the sixteen families that are now proposed for the site.
The size, bulk, height and lot location of the building and the lot area, setbacks, open space and building coverage on the lot are all reasonable for the Coalition’s proposed use of the facility for a temporary shelter and educational residence for sixteen families.
The defendants’ objection to Exhibit A for Identification is sustained.
E. Conclusion
The court will enter an order under G.L.c. 40A, Sec. 17, annulling the Board’s decision to revoke the Coalition’s building permit. The order will direct the issuance of a certificate of occupancy and will permit the Building Commissioner and the Zoning Board of Appeal to impose reasonable restrictions on the location and marking of parking spaces for the purpose of emergency vehicle access.